UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                            :

WENDELL R. HOWARD,            :

                   :

          Plaintiff,    :

                   :

         -v-          :

                   :

MTA METRO-NORTH COMMUTER    :
RAILROAD,                  :

                   :

         Defendant.  :

                   :
------------------------------------------------------------X

No. 12 Civ. 5055 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    *Pro se* Plaintiff Wendell R. Howard ("Howard" or "Plaintiff") brings this action against Defendant MTA Metro-North Commuter Railroad ("Metro-North" or "Defendant") alleging disability and race discrimination and retaliation. Before the Court is Defendant's Motion to Dismiss the Complaint ("Motion"). For the reasons stated below, the Motion is granted.

## BACKGROUND

### *Prior Litigation*

    In 2010, Howard sued Metro-North in this Court in an action captioned Howard v. MTA Metro-North Commuter R.R., 10 Civ. 3291 (GWG) ("Howard I"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("§ 1981"), arising from his June 26, 2008 termination from Metro-North and harassment he claims he was subjected to during his employment there. (Howard I, Am. Compl., October 28, 2010.)[1] Prior to filing Howard I, Howard exhausted his

---

[1]     The Court may take judicial notice of Howard I on this Motion "to establish the fact of such litigation and related filings." Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 166 n.3 (2d Cir. 2012) (citation omitted).

administrative remedies, having filed a March 9, 2009 charge of race and color discrimination ("2009 Charge") with the Equal Employment Opportunity Commission ("EEOC"), which issued a December 11, 2009 right-to-sue letter. (Opp'n 3, Ex. 7.)

On November 7, 2011, following discovery, Magistrate Judge Gabriel W. Gorenstein issued a comprehensive opinion in Howard I addressing Metro-North's motion for summary judgment. See Howard v. MTA Metro-North Commuter R.R., 866 F. Supp. 2d 196 (S.D.N.Y. 2011).[2] The lengthy factual background set forth in that opinion states, in part:

> On June 25, 2008, Howard was scheduled to work in Metro-North's Croton-Harmon rail yard. When he arrived, Howard asked the engineer who was instructing him if he could go to Grand Central Terminal to retrieve study guides. The engineer instructor gave him permission to do so. When Howard arrived at Grand Central he went to the training center and asked Santiago and Meinck [two Metro-North engineer instructors] for the study guides. Meinck said they were out of copies, but gave him a book and told Howard to make the requisite copies. After Howard made the copies, he boarded a train to go back to his assigned work site, at which point he received a phone call from Meinck asking where he was assigned that day. Immediately afterwards, Frank Mesa, the Acting Chief Training Officer, called Howard asking the same questions. Mesa also asked Howard to get off the train and come upstairs. When Howard arrived upstairs, Mesa was angry and informed Howard that an engineer cannot give permission for a trainee to leave his assigned work site to get study guides. Mesa also reminded Howard that he had recently received a disciplinary letter for missing a train. Howard told that Mesa it was not his fault. Mesa refused to shake Howard's hand when Howard offered it and told Howard to come see him the next day. . . .
>
> On June 26, 2008, Howard went to see Mesa at the appointed time[.] Meinck was also present. After Howard arrived, Mesa gave him a letter stating that his employment was terminated due to his poor judgment as exemplified by his violation of MetroNorth Operating Rule C-d and guideline no. 20 of the Accelerated Engineer Training Program, as well as his insubordination when confronted with these rule violations.

Id. at 201-02 (citations omitted). Judge Gorenstein ultimately found that Howard failed to "provide[] enough evidence . . . to allow a jury to find that his termination was motivated by his race" and granted Metro-North's motion. Id. at 209. Howard subsequently filed a motion for

---

[2]     Pursuant to 28 U.S.C. § 636(c), the parties consented to have Howard I decided by a magistrate judge. Id.

relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), which Judge Gorenstein denied on May 24, 2012. Id. at 209.

***Instant Litigation[3]***

On June 26, 2012, Plaintiff filed the Complaint in this action, after having filed another EEOC charge on June 22, 2012 ("2012 Charge") and having received a right-to-sue letter on June 25, 2012. (Compl. 3, 6; Opp'n Ex. 7.)[4]  In the Complaint, Plaintiff alleges discrimination based on his "disability or perceived disability," specifically his "speech impediment," in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, et seq. ("ADA"). (Compl. 1, 3.)  He also alleges discrimination based on race.  (Id. 3.)[5]  The factual allegations in the Complaint state, in relevant part:

> I have a speech impediment which has had a major impact on my life, and the only trainee with this recognizable issue when articulating information.  I have a regular tendency to find words to compensate for words that I was unable to say, and was medically diagnosed and declared as a person covered under the American with Disability Act [sic].  On June 25, 2008, I asked my engineer instructor for permission to retrieve my work related study guide, and was given permission to retrieve it, and on June 26, 2008, I was terminated for being false accused [sic] of leaving my worksite without permission from the training department.  John Meinck falsely reported to the Chief Training Officer, Frank Mesa that I abandoned my worksite while claiming that I left without permission.  My engineer instructor was a member of the training department personnel who was designated by Mesa, and he, as well as the other designated engineer instructors had the authority to make decisions governing the trainees that were under their supervision during the on the job training phase.  The reason articulated reason [sic] for terminating me was a pretext.  Another trainee who

---

[3]        The facts in this section are drawn primarily from the following submissions, which may be considered on a motion to dismiss a *pro se* complaint: (1) Plaintiff's June 26, 2012 complaint ("Complaint"); (2) Plaintiff's "2nd Amended Complaint" ("Amended Complaint," as no first amended complaint was filed), attached to Plaintiff's November 16, 2012 "Affirmation in Opposition to Motion to Dismiss" ("Opposition"); and (3) other materials attached to the Opposition. See Collins v. Goord, 438 F. Supp.2d 399, 403 n.1 (S.D.N.Y. 2006) ("consider[ing] factual allegations contained in [*pro se* plaintiff's] opposition papers to supplement the allegations in his original and amended complaints.")  Although the Court has reviewed, and carefully considered, all the materials attached to the Opposition, only those relevant to the Motion will be addressed here.

[4]        The EEOC dismissed the 2012 Charge as "not timely filed." (Opp'n Ex. 7.)

[5]        Although Plaintiff checked the "race" box on the complaint form supplied by the Court's *Pro Se* Office, he did not indicate the statute pursuant to which he brings his race discrimination claim. (Id. 1, 3.)

3

also followed the directions of his engineer instructor and left his worksite on the same day and at the same yard located at Croton Harmon to carry out a work related task was not terminated, and does not suffer from the same impediment nor did he or any other trainee in my class encounter the same treatment while employed. Falsely accusing me of a work rule violation that I did not commit to support their decision to terminate me, was a pretext. . . . I would like to add that I have never been terminated from a place of employment or suffered from discrimination in employment[.]

(Id. Attach. E.)

Defendant filed the instant Motion on September 28, 2012. (Dkt. 11.)  On October 9, 2012, Plaintiff submitted a letter to the Court representing that Defendant never served the Motion, and on October 16, 2012, he filed a motion for default judgment on the basis that Defendant failed to timely serve its motion to dismiss. (Dkts. 12, 15.)  In an October 23, 2012 Order, the Court denied Plaintiff's default judgment motion, attaching a copy of Defendant's motion papers to the Order, and extended the remainder of the briefing schedule. (Dkt. 16.)

Plaintiff timely filed his Opposition on November 16, 2012, which, as noted above, attached an Amended Complaint. (Dkt. 18.)  The Amended Complaint reasserts Plaintiff's ADA claim and adds a retaliation claim pursuant to § 1981 premised on "attorney misconduct."  (Id.)[6] The first six numbered paragraphs of the Amended Complaint reallege, more or less, the facts contained in the initial Complaint relating to Plaintiff's speech impediment and June 2008 termination. (Am. Compl. Attach. E.)  The seventh and final numbered paragraph of the Amended Complaint contains allegations directed at the conduct of defense counsel in this action, specifically that:

[t]he Defense Attorney retaliated against the pro se plaintiff when he knew that the plaintiff had every intention of defending this motion. . . . [H]e lied to the current Court about serving the plaintiff, and the Court believed his conclusory

---

[6]     Among the numerous other materials Plaintiff attached to his Opposition are deposition excerpts and other documents from Howard I, documents previously docketed in the instant litigation and medical reports regarding Plaintiff's speech impairment and other conditions.  The Court has reviewed these submissions, but, except to the extent they are discussed in this Order, finds them to be irrelevant to this Motion.

statement while never requiring him to present proof . . . On October 16, 2012, the defendant claimed that he sent plaintiff a copy of his motion, and while allegedly he sent the plaintiff a copy of his motion, he mentioned that he had not invoked a motion for default against the plaintiff. The defendant still carries on with this lie today, and the Court has not held him accountable. He only did it took this action [sic] against the plaintiff because he was upset with plaintiff's wife. . . . [Defense counsel] afterwards mail[ed] his Motion to Dismiss to an invalid address.

(Id.)

The Motion was fully briefed on November 30, 2012. (Dkt. 20.) In it, Defendant argues that Plaintiff's disability discrimination claim is time-barred and that his race discrimination claim is barred by *res judicata*. The Court addresses each of these arguments below, as well as the legal sufficiency of Plaintiff's retaliation claim.

## STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted). Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citation and internal quotation marks omitted); see also Lopez v. Jet Blue Airways, 662 F.3d 593, 596 (2d Cir. 2011).

## DISCUSSION

### 1. Disability Discrimination Claim

A plaintiff must exhaust available administrative remedies and file a timely charge with the EEOC before bringing an ADA claim in federal court. See 42 U.S.C. § 12117 (adopting

exhaustion requirement of Title VII codified at 42 U.S.C. § 2000e-5); <u>Goodwin v. Solil Mgmt.</u> <u>LLC</u>, No. 10 Civ. 5546 (KBF), 2012 WL 1883473, at *3 (S.D.N.Y. May 22, 2012) (citing <u>Hoffman v. Williamsville Sch. Dist.</u>, 443 F. App'x 647, 649 (2d Cir. 2011)); <u>Holland v. City of</u> <u>New York</u>, No. 10 Civ. 2525 (PKC) (RLE), 2011 WL 6306727, at *4 (S.D.N.Y. Dec. 16, 2011) (citing <u>Curto v. Edmundson</u>, 392 F.3d 502, 503 (2d Cir. 2004)). In order for an EEOC charge to be deemed timely, it must be filed within 180 days of the alleged unlawful employment practice. <u>See</u> § 2000e-5(e)(1); <u>Tewksbury v. Ottaway Newspapers</u>, 192 F.3d 322, 325 (2d Cir. 1999). "This statutory requirement is analogous to a statute of limitations." <u>Van Zant v. KLM Royal</u> <u>Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir. 1996).

The last alleged instance of disability discrimination, Defendant's termination of Plaintiff, occurred on June 26, 2008. (Compl. Attach. E.) Plaintiff did not file a charge of disability discrimination with the EEOC until June 22, 2012, nearly four years later. (<u>Id.</u> 3.) Plaintiff's disability discrimination claim is, therefore, untimely—a conclusion Plaintiff apparently does not dispute. (Opp'n 8) ("plaintiff is beyond his statute of limitation period to file with the EEOC").[7]

Plaintiff nonetheless argues that he should be entitled to proceed with his disability discrimination claim because that claim is "reasonably related" to the race discrimination claim he asserted in the 2009 Charge filed in connection with <u>Howard I</u>. Plaintiff is correct that "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." <u>Williams v. New York City Housing</u> <u>Auth.</u>, 458 F.3d 67, 70 (2d Cir. 2006). Courts have continuously held, however, that claims of

---

[7]     If an aggrieved party initially instituted proceedings with a state or local agency, he is afforded 300 days to file an EEOC charge. <u>See</u> § 2000e-5(e)(1). Plaintiff makes no claim that he instituted state or local proceedings so as to trigger the applicability of the 300-day period. Assuming, *arguendo*, that were the case, Plaintiff's 2012 Charge would still have been filed over three years late.

6

disability discrimination are not reasonably related to claims of race discrimination.  See, e.g., Edwards v. New York State Unified Court Sys., No. 12 Civ. 0046 (WHP), 2012 WL 6101984, at *7 (S.D.N.Y. Nov. 20, 2012) ("allegations of disability discrimination are not, therefore, reasonably related to the race discrimination . . . claims she filed with the EEOC.  Accordingly, to the extent Edwards raises an ADA claim, such a claim is barred."); Pinkard v. New York City Dep't of Educ., No. 11 Civ. 5540 (FM), 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on . . . disability are not reasonably related to claims based on race or color, and *vice versa*."); Joseph v. Am. Works, Inc., No. 01 Civ. 8287 (DC), 2002 WL 1033833, at *5-6 (S.D.N.Y. May 21, 2002) (disability claim dismissed for failure to exhaust because plaintiff asserted only Title VII race discrimination claims in her EEOC complaint).  Accordingly, Plaintiff's disability discrimination claim may not be deemed exhausted by virtue of the race discrimination claim in his 2009 Charge.[8]

Plaintiff also argues that the Court should apply the equitable tolling doctrine to allow his claim to proceed.  Plaintiff is correct that, in certain circumstances, courts may equitably toll a filing deadline so as to permit a plaintiff to proceed with a claim.  However, such action is limited to "rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."  Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (citations and internal punctuation omitted).  "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking

---

[8]     The factual allegations in the 2009 Charge would not have provided the EEOC with adequate notice to investigate a possible disability discrimination claim.  Plaintiff checked boxes to allege discrimination based on "race" and "color" but declined to check the box for "disability."  (Opp'n Ex. 7.)  In addition, in his lengthy "Statement of Wendell Howard," attached to the 2009 Charge, Plaintiff failed to mention having difficulty speaking. (Id.)  That Plaintiff apparently was not medically diagnosed with a speech impediment until February 2010 (see, Opp'n 3, Ex. 14) is of no moment, since, as Plaintiff acknowledges, he was free to assert in the 2009 Charge that he was discriminated against because of a perceived disability.  (Opp'n 3.)  In any event, Plaintiff's reliance on the 2009 Charge is flawed for other reasons as well.  See 42 U.S.C. § 2000e-5(f)(1) (requiring that discrimination claims be filed ninety days (90) after notice of right-to-sue letter).

application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Id. at 80-81 (citation and internal quotation marks omitted).

Here, there is no indication that Plaintiff acted with reasonable diligence during the more than three-year period he seeks to have tolled. Indeed, Plaintiff does not appear to have sought to formally raise a claim of disability discrimination during the pendency of the Howard I litigation, but instead waited until shortly after the dismissal of his Howard I race discrimination claims before raising his disability discrimination claim in this separate action. Nor are Plaintiff's assertions that he "was officially diagnosed with a severe speech disorder from a psychologist, evaluated by a psychiatrist and deemed as severely depressed," (Opp'n 8), sufficient to constitute "extraordinary circumstances" so as to trigger the equitable tolling doctrine. See Boos v. Runyon, 201 F.3d 178 (2d Cir. 2000) (depression and other mental illnesses insufficient to justify tolling without a "particularized description of how [plaintiff's] condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights."); Apionishev v. Columbia Univ., No. 09 Civ. 6471 (SAS), 2011 WL 1197637, at *6 (S.D.N.Y. Mar. 25, 2011). Accordingly, Plaintiff's ADA claim must be dismissed.

**2. Race Discrimination Claim**

Alhough the Complaint and Amended Complaint focus primarily on Plaintiff's disability discrimination claim, the Complaint also alleges a race discrimination claim. (Compl. 3.) The Court will briefly address why that claim must be dismissed by *res judicata*. The doctrine of *res judicata*, or claim preclusion, applies where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [plaintiff] or those in privity with [him]; (3) the

8

claims asserted in the subsequent action were, or could have been raised, in the prior action." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). Those elements are clearly met here. Plaintiff, in this action, asserts the same race discrimination claim raised in Howard I—*i.e.*, that he was unlawfully terminated from Metro-North in June 2008. Judge Gorenstein adjudicated that claim on the merits at the summary judgment stage. Plaintiff may not relitigate it here. Accordingly, Plaintiff's race discrimination claim must be dismissed.

### 3. Retaliation Claim

"In addition to prohibiting discrimination based on race, Section 1981 protects the right of employees to voice complaints regarding treatment that they, in good faith, believe violated their rights under Section 1981 by prohibiting retaliation in the wake of such complaints." Callahan v. Consol. Edison Co. of New York, Inc., 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002). Plaintiff's § 1981 retaliation claim is apparently based on conduct undertaken by defense counsel in this action that has no connection to the events that took place during his employment. Accordingly, § 1981 is not the appropriate vehicle for Plaintiff's complaints about defense counsel's alleged actions, and this claim must thus be dismissed.[9]

The Court has considered the remainder of Plaintiff's arguments and finds them to be without merit.

## CONCLUSION

The Court recognizes that Plaintiff feels he was treated unfairly by Metro-North and that he has spent a great deal of time and effort litigating this action and Howard I. As explained

---

[9] Plaintiff's allegations that defense failed to serve Plaintiff and engaged in other "improper" conduct, (Opp'n 8), could be construed as a motion for sanctions. The Court declines, however, to entertain such a motion. Plaintiff makes no allegation that he suffered any tangible prejudice resulting from defense counsel's alleged conduct. Indeed, whether or not Plaintiff was timely served with the Motion, Plaintiff received it directly from the Court and was able to timely oppose it.

above, however, the law mandates that this action be dismissed.  Accordingly, the Clerk of Court

is respectfully directed to close item number nine (9) on the docket and to terminate this action.

SO ORDERED.

Dated:        January 4, 2013
              New York, New York

                                                    _____
                                                    Ronnie Abrams
                                                    United States District Judge